Our next case on the call of the docket is Agenda Number 21, Case Number 111611, Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corporation et al. Counsel for the appellant. Thank you, Your Honor. May it please the Court, Counsel. My name is Gary Smith, and I represent Crossroads Ford Truck Sales. We've heard a lot of procedural cases today. This is another procedural case that involves the circuit court's original jurisdiction under both Section 13 of the Motor Vehicle Franchise Act and the Constitution, Article 6, Section 9. Now, Crossroads is a local dealer here in the courtroom, local dealership here in Springfield. We filed a 14-count complaint for damages under Section 13 of the Motor Vehicle Franchise Act against Sterling Truck Corporation and other defendants, alleging certain violations of the Motor Vehicle Franchise Act, including one involving termination of the franchise. Now, that implicated a Section 4D6 claim that was also brought under Section 13. The elements in a 4D6 claim do include issues of good cause. The circuit court dismissed 12 of the 14 counts and made a Rule 304A finding. On appeal, the appellate court decided that it did not have jurisdiction under Section 13 or 4D6 for those counts involving 4D6. The appellate court adopted the dissenting opinion of Judge Holdridge in a case that was decided, well, this case was on appeal. It was the Clark against Airstream case. Now, the appellate court below here said that for Crossroads to exercise its claim for damages under Section 13 for a wrongful franchise termination or involving termination issues, Crossroads should have filed its claim initially with the agency, the Motor Vehicle Review Board. It was successful there and re-filed its claim for damages in the circuit court in order to pay some acknowledgment to Section 13. But Section 13 says that the dealer has the right to file a claim for any violation of the act and file a claim for damages in the circuit court. There's nothing in the statute, nothing in the Motor Vehicle Franchise Act, that in any way outlines the procedural process adopted by the appellate court in this case. Now, the circuit court, we begin with the premise that the circuit court has original jurisdiction of all justiciable matters. That's the constitutional premise that we start with. And Section 13 clearly, the legislature passed Section 13, clearly says that any violation of the Motor Vehicle Franchise Act allows a dealer to bring an action for damages. The circuit court, I'm sorry, the appellate court below relied on Section 12 of the Motor Vehicle Franchise Act, which says that a dealer should bring a protest with a review board when the claim is a certain type of claim and it involves a remedy other than damages. Well, this is certainly a complaint, multi-count complaint, seeking damages. Section 12 really doesn't apply at all here, although that's what the appellate court, we believe, wrongfully said. This court's decision... So would the court have to determine good cause? Wouldn't there have to be a good cause analysis in this case, though? The good cause analysis would not necessarily be determined by the court, Your Honor. How would that be determined? Isn't that a policy question? Well, this case is really governed by this court's decision in employees' mutual insurance against skilling. Now, the good cause issue that you're alluding to was decided by this court in Fields-Jeep Eagle. And Fields-Jeep Eagle did say that certain legislative policy questions should be decided by the legislature or, in this case, the administrative agency and not the court. But looking to skilling as the real test here, skilling says that the legislature can vest exclusive original jurisdiction in an administrative agency, but it must do so explicitly. Explicitly test is the same sort of test that this court uses in constitutional matters involving direct appeal from an administrative agency to the appellate court. The explicitness test has failed here. No one has argued, defendants do not argue, the appellate court didn't say in any way implicate that there is an exclusive jurisdiction of Crossroads 4D6 claim with the agency, the Motor Vehicle Review Board. So taking this analysis that this court put out in skilling, there's concurrent jurisdiction of the claims, but this court clearly said in skilling that when there's concurrent jurisdiction, the default rule sort of is that the jurisdiction of the circuit court is paramount. So that doesn't mean that that's the end of the analysis, though, Your Honor. The key difference in this case is the one that you're alluding to, and that is that Crossroads 4D6 claims do involve elements of good cause. Legislative sort of a matter. But the appellate court below did not follow the skilling test, and in fact it didn't even mention skilling in its decision. It just completely ignored skilling and that original jurisdiction issue that skilling addressed in Article 6, Section 9. Section 13 of the Act provides that a dealer can go to circuit court for any violation of the Act and seek damages, equitable relief, injunctive relief. Now, certainly a dealer would not go to the Motor Vehicle Review Board for injunctive relief. There's no authority that the Review Board has for it. The same is true with equitable relief. Those are matters that are to be decided in circuit court, and the same is true for damages. Damages are what were sought here. One cannot go to the Motor Vehicle Review Board to recover damages. There's no statutory authority to do so, but it clearly allows the dealer to seek damages in circuit court in Article 13, or Section 13 of the Motor Vehicle Franchise Act. We're sort of in a dilemma here where we seek damages, and yet there's the skilling test and there's this fields decision where you've indicated, Your Honor, that, you know, there's certain legislative concerns with good cause policy issues. But skilling says that to have primary jurisdiction, it has to be concurrent original jurisdiction. Is that correct? Concurrent original jurisdiction. No, original. Concurrent or original. Correct. So if they have primary jurisdiction to refer this good cause determination out to the Motor Vehicle Review Board, how could they do that if they don't have concurrent or original jurisdiction? Well, they do have concurrent original jurisdiction. Under skilling, they have concurrent jurisdiction because the jurisdiction for damages claims does not lie with the Motor Vehicle Review Board. It clearly lies with the circuit court under Section 13. And under skilling, when there is a claim that could be decided either by an administrative agency or by the circuit court, then the circuit court has the paramount jurisdiction. Now, that's not the end of the analysis, as I said. Certainly, the doctrine of primary jurisdiction would allow the circuit court to refer the case to the administrative agency for those good cause issues. And once decided the administrative agency have to have concurrent jurisdiction in order to do that? Well, the administrative agency has a certain type of jurisdiction under Section 12 to decide good cause. It says that it decides good cause, and it refers to giving the agency the power to consider all relevant factors and includes the factor of public interest, which feels found to be legislative in nature. So certainly, the case should start in the circuit court following the skilling analysis, and there is concurrent jurisdiction based upon the statutory language in both 12 and 13. What is missing for the agency here is that the agency cannot award damages, and damages are exactly what Crossroads is seeking in its complaint. So there is concurrent jurisdiction. Certainly, damages are not part of the case that the agency can address. So clearly, there's concurrent jurisdiction. Certainly, that's the argument we present, and that's the resolution of the case is to take the case, start the case in circuit court, refer the good cause issues to the agency, and then once decided there, the damages phase of the case can be decided in circuit court. That does several things. That honors the decision of this court in fields, giving the appropriate acknowledgement to the legislative function of making those good cause determinations. It preserves the original jurisdiction of the circuit court under the skilling test and is in Article VI, Section 9. It avoids the problems and entanglements of race judicata, which I heard earlier arguments involving race judicata, and those are certainly present here. Had Crossroads gone to the administrative agency where the agency has no jurisdiction for damages and sought damages, one, it's case there. I mean, we're at the pleading stage in this case. You assume for purposes of pleading that Crossroads wins at the agency. If Crossroads would have then tried to follow this opinion and go to the circuit court and sue for damages, with all due respect, the other side would be jumping up and down, indicating that you can't have a second bite at the apple, there's an identity of causes of action here under River Park and the transactional analysis test, and that the agency decision would be race judicata. Crossroads could not refile its claim in circuit court and seek damages. Although clearly the legislature intended for Crossroads to have that right because it's expressly provided for in Section 13. So doing primary jurisdiction would harmonize and reconcile these competing constitutional provisions and honor exactly what the legislature said, that the dealer should have a right to do in Section 13. To follow the outline that was presented by the appellate court, this bifurcated piecemeal approach, where you start at the agency and then refile, it makes two cases instead of one. If the case is filed initially in circuit court, it's one coherent, unified case. The piece of it that belongs to the agency gets referred to the agency, that gets decided, and then the second phase of it comes back to the court to be decided. But it can't go from the bottom up with the agency starting first, because most persuasively there is absolutely nothing in the structure of the statutes to allow for that. This is pure judicial creation. There's no way one could look at both Section 12 and Section 13 and decide, well, what am I going to do for my client, and come to the conclusion that an action for damages should be first filed in an agency that doesn't decide damages question, and then later on we'll have another shot at it on the damages phase in circuit court. No way one could foresee that. We argue that matters like this, for a dealer who clearly has the right to sue for damages, should not be left to speculation, conjecture, guesswork, or chance. But that's essentially what Crossroads is faced here. They're saying that, well, circuit court didn't have jurisdiction. You should have started over at the agency. And that's completely contrary to the Skilling decision and NL Industries' decision in this case. And although fields, the legislative issues that are brought up in fields are present, they can be harmonized by primary jurisdiction in sending the case, that phase of the case, to the agency for its decision. Now, there is one other important pleading matter that I would like to raise, and that is involving this good cause issue. The circuit court dismissed 12 of the counts, and the fourth district held that it could not rule on those good cause section 4D6 claims because it didn't have jurisdiction. The pleading standards at the Motor Vehicle Review Board are notice pleadings, pretty light notice pleadings, and they are provided for by rule. I cite this in page 21 of my brief. Those pleading standards are being misapplied. The 2615 standards are being misapplied if this court decides that primary jurisdiction should be applied to those portions of those counts of Crossroads complaint that should go to the administrative agency for deciding. In other words... Was that in your PLA, Mr. Smith? This part of it is in the argument, I believe so, Your Honor. It's in the brief on primary jurisdiction. Okay. You would agree, though, that there were matters raised in your brief that were not raised in your PLA? Some. Okay. Yeah. There were extensive ones having to do with the pleadings on various counts. Well, but it seems by you asking us, I believe, to really change our rules with respect to whether or not we should entertain argument on things not in the PLA that you acknowledge we would have to change our rules. And if we don't, we're really relegated to the determination on the jurisdictional issue alone. Is that fair? Well, if you decide on the jurisdictional issue with respect to referring the case to the administrative agency, as I've argued, I think you don't reach a lot of those issues. Right. But we also don't reach a lot of those issues if we don't change our rules with respect to you can only argue what's in your PLA. You can't raise it in your brief. You could do with that. I mean, that's certainly possible. I still like my argument about it, though, with respect to the space limitations between the PLA and the brief, because basically the PLA is a screening tool that this court uses to determine what cases are appropriate for your attention. Okay. All right. Our position is then that if this case should go back, it should be reversed and remanded to the circuit court with directions to send those good cause issues to be decided by the administrative agency. And in that process, those counts that were dismissed on the good cause issues, those four D6 counts, and there are several of them, they should be reinstated and decided by the administrative agency on notice pleading standards, because to do so otherwise would be invading the province of the administrative agency. It would be applying more stricter standards in circuit court on that portion of the case that should be decided by the administrative agency. Thank you. Thank you, counsel. Counsel for Appleby. May it please the court, my name is John Christensen. Thank you for the privilege of allowing a Wisconsin lawyer to argue in this court. And you are attorney for? I'm attorney for the Appleby's Sterling Truck Corporation, Daimler Trucks North America, and Chris Patterson, the president of Daimler Trucks. Thank you. On October 14, 2008, Daimler Trucks and Sterling decided that after 10 years of unsuccessful operation, they would withdraw the products from market. And they announced this to their entire dealer network, but told them that they could execute a release and obtain some benefits, including a cash payment, or they could elect to continue with their existing franchise agreement doing parts and service only. And in a letter clarifying on November 24, Crossroads and all other dealers received crystal clear notification that they could continue operating in that fashion. And that is what Crossroads has done since October 14, 2008, including purchasing trucks out of corporate inventory in the summer of 2009, after the cessation of manufacturing. The question of subject matter jurisdiction did not occur to me until I read the dissent in Clark Investments. But since subject matter jurisdiction wasn't waived, I took a run at it in the Court of Appeals, and I thought there are good arguments for why that is the case and why this court should affirm the holding of the Court of Appeals. Seldom is a frequently amended statute a paragon of clarity, and I think even Mr. Smith, my friend, would agree with it in this particular circumstance. Justice Holmes said a page of history is worth a volume of logic, and I think that observation applies here. If we look at what this court concluded in fields by saying that the good cause requirements of the statute were then to be applied by the circuit court were things that invaded the province of the legislature or the administrative body, then we say what did the legislature attempt to do by rectifying that constitutional infirmity? And what they did was to create the board and invest the board with specific circumstances, not all of the violations of the Motor Vehicle Franchise Act, but those for terminations, non-renewals, add point cases, sale and succession type cases. They said, you know what, we're going to send those to the board because we're going to create a tight timeline for the board to decide these issues. And contrary to Mr. Smith's assertion, while all that's happening, you have an automatic injunction because the termination is stayed while the period of this quick administrative process goes forward. There has to be a protest that's filed within 30 days, and there has to be a hearing within 60 days. And what does that accomplish? It accomplishes the fact that the dealer's interests are not harmed and the manufacturer's interests are not harmed because the dealer who can make a case beating back a showing of good cause and establish the manufacturer's wrong gets to stay in business. And the manufacturer that establishes good cause gets rid of an underperforming dealer. Now, Mr. Smith commenced a protest in this case and then voluntarily dismissed it and instead went to circuit court. I acknowledge that Section 13 creates the suggestion that you can file a claim for damages anytime, anywhere. And it is difficult to harmonize all the elements of this statute in light of what the legislature was attempting to do. But the goal of the protest process is to prevent damages by testing whether or not there's good cause. If we dispute, Mr. Christensen, between you and Mr. Smith, just basically where do you start? Do you start with a good cause finding that then would go to the circuit court with respect to damages? Or, as Mr. Smith would indicate, since the agency cannot award damages, you start in the circuit court and if there has to be a good cause determination, that goes to the agency. Is it a what comes first situation? I think that's right. But if we trace out what happens in either of those two circumstances, I think it becomes clear which method the legislature intended. And let's just say, for example, ask the question of what standard of good cause would apply if good cause were decided by the circuit court. And this is where, I have to say, Mr. Smith briefed attempts to finesse the issue. Because Section 12 sets out the factors of good cause to be determined by the board. It says by the board. It doesn't say by the circuit court. So if the circuit court were to use those multi-factor tests of 12D, of whether the investment was necessarily made the permanency of the investment than the public interest being served, we'd be right back in the fields conundrum. I think everybody agrees with that. So that means that the circuit court looks to the definition of good cause under Section 2V, which is the general standard saying, facts establishing commercial reasonableness in lawful or privileged competition business practices defined in common law. Now the board applies that same standard, but then the statute says, plus the other ones among others, creating an entirely different set of governing standards, a general commercial reasonableness, if you will, versus the particularized standards to be applied by the board. So if Mr. Smith's first position is, I can just go to the circuit court, period. Recall that his referral back is only a backup point. But his first point is, I can just go to the circuit court and stay there. If he really believed there was a referral back, he should have pursued it in this case, but of course he didn't. He had every opportunity to do so, and his suggestion that we didn't file an answer, I don't think that makes much sense. If he really believed that there was a referral back, he could have done it, but he didn't. His initial position is, I get to go to the circuit court, I get to stay there, and in that circumstance we are presented with, I think, a very taxing due process question of having a manufacturer's conduct governed by two separate standards depending upon where Mr. Smith, sitting in his office, decides he wants to go. Because if he goes to the circuit court, it's commercial reasonableness. If he files his protest with the administrative board, they apply the much more complex and public policy based factors set forth in 12D. I can't imagine that a manufacturer should be required to run the risk of governing its conduct, depending upon a separate standard in the dealer's decision making, and then expect to be able to satisfy those standards. I don't think that this court would logically set down that that would comply with a due process concern. If, on the other hand, my suggestion, the decision of the appellate court and the decision in Clark Investments' dissent were accepted, the protest is made before the board, then we're asking a body which has a built-up process of expertise to analyze the question of the existence of good cause using the factors of 12D. And they can decide whether or not, in fact, there is a termination. Which, as the justices know, is one of the principle underlying defenses that we make in that there's no termination that triggers any of these claims because the dealer continues in operation, as the Court of Appeals found in this case, under a different cause of action not based on 4D6. So the board decides, is there a termination? And if there's termination, is there good cause? Now, I happen to agree with Mr. Smith, and there are very few things about which we do agree, that there is a res judicata effect of that decision on the question of good cause and the existence of a termination, one being a mixed question of law and fact and one being a question of fact. And I believe that we would be bound by that determination, had he proceeded with his initial presentation in the board instead of dismissing it. And if he won, he'd have the advantage in a subsequent damages action. And if I won, I'd have the advantage in the subsequent damages action. But under his referral back question, referral back theory, that is his backstop argument here, when would all this be done? The statute of limitations in Section 14 of the Act for actions in circuit court is four years. The requirement of a proceeding before the board is a much shorter 30 days. So, ironically, we could have a situation here in which three years and one day shy of four years, he files his damages proceeding, having never gone to the board. And then there would be this implicit referral back to the board, wholly out of scale with the timetable set by the legislature for proceedings before the board. And in any event, this isn't concurrent jurisdiction, because to be concurrent jurisdiction, in my estimation, and of course I'm not an expert on this in your laws of concurrent jurisdiction, but it seems to me that if the board can only award what amounts to a decision that has preclusive effect of an injunction, in other words, you can't terminate or you can. And if the circuit court can award injunctive relief or damages, that's not wholly concurrent. And I see nothing in the statute that would suggest that the circuit court could refer it back. There's no procedure called out for doing so. And indeed, under Section 12, the board can only decide a case other than one for damages, and if the circuit court action were commenced purely for damages, that doesn't seem to flange up in terms of the grant of the jurisdiction to the agency. Those are my arguments on the subject matter jurisdiction issue. I think we come to some fairly concrete decisions that provide a guidepost as to which way it ought to go, even though we're dealing with a very ambiguous statute. Now, I think the case was clearly resolved and in the right way by the circuit court. Judge Kelly made his determination that a termination, he didn't reach the issue of whether there actually was a termination. Instead, what he said was, even if there were a termination, we have this Section 4D-6D that says if a manufacturer stops making or assembling motor vehicles, that is good cause for termination. We don't have to go any further. I don't know why Mr. Smith did not at least allude to, outline, provide one sentence summarizing the arguments that he made in opposition to the non-subject matter jurisdiction type claims before the appellate court. He made all those arguments. They were all advanced there, but he didn't. And under this Court's decisions in Sullivan, Frontline, Transport, and McCarty, I believe he's waived those alternate arguments. But I want to proceed further, and that is to the questions not reached by the Court of Appeals because of their conclusion on subject matter jurisdiction. Because I believe this Court should reach those, if you disagree with me, on the question of subject matter jurisdiction. You should reach those decisions in order to affirm on alternate grounds the decision of the Court of Appeals on the issues that weren't reached because of the subject matter jurisdiction. And that is the question of whether or not there was a termination that would trigger these issues anyway. Two federal court cases have reached the issue and have decided that because the November 24th letter to all the dealers saying we are not terminating the agreement, you can go forward under the sales and service agreement if you wish. That's not a termination triggering the application of a termination provision in the state motor vehicle dealer law. The first case, L&B in Vermont, and the second case, Long Lewis,  It's undisputed that Crossroads stayed in business, doing parts and service work, displaying the sign, advertising, even doing service sterling specials long after the cessation of manufacturing of the actual trucks themselves. And in fact, I think Mr. Smith may have hoisted himself on his own petard here by the fact that he alleged that Crossroads bought 12 more vehicles in the summer of 2009 after that manufacturing ceased under the terms of the franchise. And the franchise was alleged in the complaint to be the sterling sales and service agreement. That's the only agreement under which they can display the trademark, take orders for parts, and perform warranty and other service. We offered a renewal of that agreement in the summer of 2009. A simple extension, not a word was changed through the end of 2011. They never acted upon it. So the question is whether there was a termination, a constructive termination, a constructive notice of termination, something I still don't understand what it is. But none of that happened because they continued to operate under the sales and service agreement. Mr. Smith argues that it can't be a franchise unless you sell trucks or sell motor vehicles. But the language defining what a franchise is in the act says that it can be for the sale of vehicles or parts. If you don't like that argument, I have another one. And that is that even if there were a termination, which I believe with all my heart there isn't, then Section 4D, 6D says that the cessation of manufacturing or assembly is good cause for termination. To that, well, the fact is I have to also note that the legislature changed its mind. And it said in the spring of 2009, we don't like that statute. And so they took that off the books. But it became effective on May 22nd. And the complaint itself says that the cessation of manufacturing occurred at the end of March in 2009. So the statute applies to the circumstances in this case. If Mr. Smith alleges the new statute applies, then we're in the realm of my constitutional argument of the Contracts Clause, both on the United States and the Illinois Constitution. But I don't think we need to get there because the statute says that a manufacturer can go out of business in doing so. And so Mr. Smith's answer to that is, no, all you're going to do is create substantially the same trucks as made by Sterling, what he calls his rebranding argument. He's arguing that what we'll do is take, and he's pretty cagey about it, he doesn't say the exact bolt for bolt trucks. He says substantially the same trucks, and we're going to put them into the Western Star or Freightliner lines of trucks, two other brands owned by Daimler Trucks. And here's where the rules of pleading are particularly important. Because he can't just simply make a conclusion, he has to plead evidentiary facts. And the only evidentiary basis for his claim is a press release that Daimler AG, the corporate parent of DTNA, made, saying the Sterling brand will be discontinued effective in March of 2009. And additions to the Freightliner Western Star product ranges will be made to address market segments that have been served exclusively by Sterling offerings and the DTNA stable. The question is, what evidentiary impact does that statement have? The press release is attached to the complaint. What does it say to a reasonable person? That is the essence of a conclusion rather than an evidentiary fact. And I might point out that Mr. Smith's argument about the standard of pleading in this case was not raised before this court. It wasn't in the petition, and it wasn't in his brief. He did argue before the appellate court that we ought to, and I don't understand how, apply administrative pleading rules to a circuit court proceeding. I have yet to be convinced how that could possibly work. But the circuit court in this case judged the pleading standard under any other circuit court case pleading standard and said you need to plead evidentiary facts. There are no evidentiary facts in this complaint that would allow you to say that even if there were an intent to rebrand Bolt for Bolt, that's what was going to be done. The circuit court went one step further and said even if it were Bolt for Bolt, you take the sterling trucks, take off the nameplate, put on a Freightliner nameplate, and sell it through the Freightliner dealer body. Judge Kelly said that's okay. That's contemplated by the statute because it refers to the discontinuation of a line make. And a line make means a brand, as we can see by the countless other times line make is used in the statute. So what I'm saying is we've got three ways to win so far, but I'm not done yet. Because if that doesn't work, then projecting the power of the state of Illinois to a market withdrawal for all 50 states does raise a very serious constitutional question under the Dormant Commerce Clause. Because to charge what amounts to an exit tax, to allow a claim for damages making franchising a risk-free endeavor to a dealer, would offend the Commerce Clause, the Dormant Commerce Clause of the United States. You don't have to go with me on all of those. I'll just take one of any of those four. And I suggest respectfully, Your Honors, that the decision of the Court of Appeals be affirmed. But to the extent that you disagree with the court, the appellate court, I'm sorry, I'm used to a different reference. But to the extent that you disagree with the rationale on subject matter jurisdiction, you reach the additional issues in order to affirm the appellate court rather than sending it back for redetermination. Thank you very much. Thank you, Mr. Christensen. Your Honor, I do agree that where we start is an important matter that this court has to decide in this case. And that is, Justice Thomas, what we do disagree on. Where this case should start, I think, was what probably caught the interest of the court in the first place. And it came about in the appellate court's decision through that dissenting opinion of Judge Holdridge that was decided after Judge Kelly and the circuit court made his decision. So some of these matters have been raised through changes in the opinion process on the way up on appeal. So where we start is clearly in the circuit court. Matters have been raised by the dissenting opinion of Judge Holdridge and by the Fourth District here, implicating these good cause issues as legislative in nature or under fields. And I think the process that I've outlined in the brief and outlined this morning adheres to those constitutional principles. There is clearly concurrent jurisdiction of the agency and of the circuit court. Section 13 clearly says any violation. Even Mr. Christensen agrees that it is that plain that it can be any violation of the act that the dealer can sue for and sue for damages. Section 12 of the Motor Vehicle Franchise Act, as Mr. Christensen also outlined, sets forth certain good cause principles that the agency can decide on issues of good cause, all relevant considerations, public policy matters, and the litany of the list in Section 12D. There is concurrent jurisdiction just by reading the statute over the type of claim that Crossroads is asserting here, but certainly damages have to begin the analysis of this case in the circuit court. Now, Mr. Christensen talked about the termination. Termination is not an issue. That's something that needs to be decided on the evidence. We're at the pleading stage still in this case. The Motor Vehicle Franchise Act provides that the dealer's cause of action basically arises when he receives notice of termination yet to come. You don't have to wait until you're shut down or terminated or harmed. So that's what's happened here, and Crossroads, quite frankly, has filed its action for damages, because going to the administrative, the remedy that the administrative agency could give here would be something of the nature of reinstating or continuing its franchise, but the franchise is going to come to a crashing halt when the dealer, I'm sorry, when the manufacturer, Sterling and Daimler, stop manufacturing trucks. There won't be a motor vehicle franchise at that point because there won't be any motor vehicles under the motor vehicle franchise for Crossroads to sell. It will be just a regular franchise under an entirely different statutory scheme that will evolve by default. So Crossroads, feeling that it's getting a wrongful termination of its franchise, sued under Section 13 in the Circuit Court, where it could get the remedy that the Motor Vehicle Review Board could not award. So good cause issues implicate the fact that it's legislative in nature to decide good cause, and it's not the appropriate role for the Circuit Court to do that. Primary jurisdiction is the answer, and although Mr. Christensen says that it's not in the statute, it is a well-known, well-recognized procedure by this Court and the appellate courts, primary jurisdiction and under the conditions under which it occurs. Courts have the authority to do that, but the bottom-up process that the appellate court decided in this case, where you go through a bifurcated filing procedure, you start at the agency, and if you're successful there, you run down the street to the Circuit Court, file again, that's not going to wash. That is not recognized anywhere. It's not expressed anywhere in the statute. And had Crossroads done that, it would have faced race judicata implications all day long. The case would have been decided at the agency. That would have been the end of it. Basically, Crossroads would have elected its remedy by staying at the agency, and it would have no right to sue a second time in Circuit Court. The defendant would point and say, look, the very language in the statute. That's if you prevail. I heard him say that, too. Yes, he could. It is wrong. He most certainly could. And that Crossroads, under the transactional analysis test, you get to do everything that you can, all possible claims. And by going to the agency, what defendants would say is, you waived your right. You are precluded from now going to Circuit Court under Section 13, because Section 13 clearly says, in plain, plain language, that you can sue for any violation and seek damages. And by going to the agency and seeking the agency's powers and the remedies that the agency can award, which in this case would be insufficient for Crossroads, you gave up your Section 13 right to sue for damages. You are precluded from doing that a second time. Is that what the appellate court said here? No, the appellate court didn't say that. They didn't get that far. They said you do that two-step process. Well, except you would deprive Crossroads to sort of be the guinea pig in that process, because you would say that Crossroads should have guessed right the first time and gone the other way, although there's no guidepost or guideline to indicate that. As I said earlier, this would put Crossroads in the guesswork framework of a catch-22 position. Basically, catch-22 shouldn't be the rule. When you look at skilling and you look at the plain language of 13, clearly Crossroads' appropriate place to start was in circuit court. Under your scenario, though, why would anybody go to the board? Well, if the franchise is going to be terminated and the dealer wanted the remedy of keeping the franchise going and staying in business, that's why it would go to the board. Mr. Christensen pointed to the expedited procedures for decision-making. Those are really for dealer protection, so the dealer is usually given a date by which this termination is going to take place. Does that say so in the statute, for dealer protection, to go to the board? There is case law in General Motors that this court decided only a few years ago that says the purpose of the act, among other, protection of the public and protection of the dealers, is to be liberally construed in the dealer's favor. It doesn't exactly say that in Section 12, but in the prefatory portion of the statute and in the previous case law, yeah, it's really for dealer protection, and I think it should be interpreted in that light. We pray that the court reverse and remand the appellate court, reverse the district court, remand this matter to the circuit court and reinstate Crossroads' claims, and if the matters need to be referred to the administrative agency, that they be referred to the agency and under notice pleading standards.